NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LMT MERCER GROUP, INC., | : | Civil Action No.: 11-0539 (FLW) |
| Plaintiff, | : | |
| v. | : | MEMORANDUM OPINION AND ORDER |
| MCFARLAND CASCADE HOLDINGS, INC., et al., | : | |
| Defendants. | : | |

**ARPERT, U.S.M.J**

**I.     INTRODUCTION**

This matter having come before the Court on a Motion by Defendants McFarland Cascade Holdings, Inc. and McFarland Cascade Pole & Lumber Company (collectively, "Defendants") to stay this matter pending completion of the U.S. Patent and Trademark Office's *ex parte* reexamination of the '637 patent [dkt. entry. no. 10], returnable June 6, 2011.  Plaintiff LMT Mercer Group, Inc. ("Plaintiff") filed opposition on May 2, 2011.  Defendants filed a reply brief on May 13, 2011.  For the reasons stated herein, Defendants' Motion is granted.

**II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 31, 2011, Plaintiff filed a Complaint against Defendants ("McFarland Action") alleging infringement of U.S. Patent No. 6,722,637 ("'637 patent") entitled "Fence Post Accessory Apparatus".  *See* Pl.'s Comp., dkt. entry no. 1 at 1, 3.  In addition, Plaintiff filed two (2) separate actions in the District of New Jersey alleging infringement of the '637 patent against different defendants.  Those matters are captioned *LMT Mercer Group, Inc. v. Maine*

*Ornamental, LLC, et al.*, Civ. Action No. 10-4615 (D.N.J. 2010) ("Maine Action") and *LMT Mercer Group, Inc. v. Home Tops, LLC*, Civ. Action No. 10-6699 (D.N.J. 2010) ("Home Tops Action"). Presently, all three (3) actions are assigned to District Judge Freda L. Wolfson and Magistrate Judge Douglas E. Arpert.

On February 1, 2011, Maine Ornamental, LLC, Universal Consumer Products, Inc., and Universal Forest Products, Inc. ("Maine Action Defendants") filed a request for *ex parte* reexamination of the '637 patent with the United States Patent & Trademark Office ("USPTO"). *See* Def.'s Decl. of Christopher H. Strate ("Strate"), dkt. entry no. 10-7, Ex. D. The Court notes that the Maine Action Defendants made this request based, in part, on a "continuation application" filed by Stallion Fence Accessories – Plaintiff's predecessor in interest – which was rejected by the USPTO with respect to "claims very similar to the claims issued in the '637 patent on the basis of" additional prior art. *Id*. The Court notes that on February 9, 2011, the USPTO "issued a Notice of Failure to Comply with Ex Parte Reexamination Request Filing Requirements under 37 C.F.R. § 1.510 and required Defendants to modify" their request within thirty (30) days. *Id*. On March 9, 2011, Maine Action Defendants filed a second request for *ex parte* reexamination of the '637 patent. *Id*. On March 29, 2011, the USPTO granted Defendants' request for *ex parte* reexamination. *Id*. Specifically, the USPTO concluded that "each of the references cited by the [Maine Action Defendants] raises a substantial new question of patentability with respect to the subject patent" and, "[a]ccordingly, claims 1-23 of the subject patent will be reexamined". *Id*.

On April 21, 2011, Defendants filed a Motion to stay this matter pending the USPTO's *ex parte* reexamination of the '637 patent. *See* dkt. entry no. 10. The Court notes that a similar

motion to stay proceedings was filed in the Maine Action on April 4, 2011.  *See LMT Mercer Group, Inc. v. Maine Ornamental, LLC, et al.*, Civ. Action No. 10-4615 (D.N.J. 2010), dkt. entry no. 32.  The Court also notes that a similar motion to stay proceedings was filed in the Home Tops Action on May 13, 2011.  *See LMT Mercer Group, Inc. v. Home Tops, LLC*, Civ. Action No. 10-6699 (D.N.J. 2010), dkt. entry no. 18.

    A.    **Defendants' Arguments in Support of the Motion to Stay**

Initially, citing *Softview Computer Products Corp. v. Haworth Inc.*, 2000 WL 1134471, at *1 (S.D.N.Y. 2000), *Ethicon v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988), *Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008), *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir.), *cert. denied*, 464 U.S 935 (1983), Defendants maintain that "[t]his Court has the inherent power to stay proceedings pending a patent reexamination". *See* Def.'s Br., dkt. entry no. 10-1 at 2-3.  Citing *Gould*, 705 F.2d at 1342, Defendants contend that the "objective of the reexamination procedure is to eliminate the need to try the issue of validity of a patent claim (when the claim is cancelled by the [US]PTO), or to facilitate trial of that issue by providing a district court with the expert view of the [US]PTO".  *Id.* at 3.  Citing *ICI Uniqema, Inc. v. Kobo Prods., Inc.*, 2009 U.S. Dist. LEXIS 108421, at *3 (D.N.J. 2009), Defendants state that "some benefits provided by a stay include: (1) a review of all prior art presented to a court by the Patent Office with its particular expertise; (2) the potential alleviation of numerous discovery problems relating to prior art by Patent Office examination; (3) the potential dismissal of a civil action should invalidity of a patent be found by the Patent Office; (4) encouragement to settle based upon the outcome of the Patent Office; (5) an admissible record at trial from the Patent Office proceedings which would reduce the complexity and length

3

of the litigation; (6) a reduction of issues, defenses and evidence during pre-trial conferences; and (7) a reduction of costs for the parties and a court". *Id*.  Further, Defendants acknowledge that, pursuant to *ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421, at *3-4,

> In deciding whether to stay a matter pending reexamination, courts have developed a three-part test.  A court should consider (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Id*.

### 1.    A stay will not prejudice or disadvantage Plaintiff.

Citing *Sabert Corp v. Waddington North America, Inc.*, 2007 U.S. Dist. LEXIS 68092, at *21 (D.N.J. 2007), Defendants maintain that "[c]ourts in this district have recognized that when a request for stay is made in the early stages of discovery, the likelihood of prejudice to the patent owner is decreased". *Id*. at 3-4.  Defendants note that in this matter, "the Court has not held an initial scheduling conference", "the parties have not exchanged infringement or validity contentions", and "the parties have not exchanged discovery requests or taken any depositions" and thus argue that "Plaintiff will not be significantly prejudiced by...a stay at this juncture". *Id*. at 4.  Citing *ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421, at *4, 35 U.S.C. § 305, and the MANUAL OF PATENT EXAMINING PROCEDURE § 2261 (2008), Defendants contend that "courts in this district recognize that the delay inherent in the reexamination process does not constitute, by itself, undue prejudice" and "such delay is considered relatively short as the [US]PTO is required to conduct all reexamination proceedings with special dispatch". *Id*.  "Given the posture of this case, the benefits provided by a stay pending the outcome of reexamination" and "any delay will

4

be minimized by the expedited handling of reexamination by the [US]PTO", such that any prejudice to Plaintiff will be minimal and does not outweigh the benefits of staying this action". *Id*.

### 2. A stay will simplify this litigation.

Citing *ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421, at *5, *Ethicon*, 849 F.2d at 1428, and *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60, 62-63 (D.N.J. 1992), Defendants argue that "reexamination proceedings will eliminate, narrow, or clarify key disputed issues in this litigation" because "[c]laims that may be rejected during the reexamination will not need to be litigated and...any claims surviving reexamination may be amended" such that "a stay would prevent resources from being expended on invalid or amended claims". *Id*. at 4-5. "Even if the reexamination did not lead to claim amendment or cancellation, it could still provide valuable analysis to the district court". *Id*. at 5. Defendants note that the USPTO "reports that 77% of *ex parte* reexaminations lead to canceled or amended claims" and, therefore, "[s]ince it is very likely that the claims of the patent-in-suit will be changed or cancelled, the issues of infringement and validity cannot be properly addressed at this time". *Id*. Defendants contend that "the posture of this action favors the conclusion that a stay in favor of *ex parte* reexamination" should be granted. *Id*.

### 3. A stay is warranted based upon the stage of this litigation.

Citing *Sabert*, 2007 U.S. Dist. LEXIS 68092, at *21 and *GPAC*, 144 F.R.D. at 64-65, Defendants maintain that "this action is in its infancy" such that "[g]ranting a stay will avoid a waste of time, money and resources by the Court, the parties and even a jury in adjudicating claims that are cancelled or amended during the reexamination proceeding". *Id*. at 5-6.

### B.     Plaintiff's Arguments in Opposition to the Motion

Initially, citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936), Plaintiff maintains that although the Court's inherent power to control its own docket includes the power to stay proceedings, the "Court must weigh competing interests and maintain an even balance" such that the "party moving for a stay must make out a clear case of hardship or inequity in being required to go forward...if there is even a fair possibility that the stay for which he prays will work to damage someone else". See Pl.'s Opp'n Br., dkt. entry no.15 at 6-7.  Citing *BarTex Research LLC v. FedEx Corp.*, 611 F. Supp. 2d 647, 650 (E.D. Tex. 2009) and *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427-28 (Fed. Cir. 1988), Plaintiff contends that "[l]itigation and reexamination are not mutually exclusive alternatives for the parties to test the validity of a patent...[and] may be concurrent proceedings". *Id*. at 7-8.  Citing *eCOMSYSTEMS, Inc. v. Shared Mktg. Servs., Inc.*, Case No. 10-531, slip. op. at 4-5 (M.D. Fla. 2011), *MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 2d 556, 563 (E.D. Va. 2007), and *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005), Plaintiff argues that a district court "is under no obligation to delay its own proceedings by yielding to ongoing Patent Office patent reexaminations, regardless of their relevancy to infringement claims" because "such a rule would invite parties to unilaterally derail litigation". *Id*. at 6-7.  Citing *Wyeth v. Abbott Labs.*, 2001 WL 380902, at *2 (D.N.J. 2011) and *Bel Fuse, Inc. v. Halo Elects., Inc.*, Case No. 07-2168, slip op. at 35 (D.N.J. 2009), Plaintiff maintains that courts generally weigh the following three factors to determine whether to grant a stay pending reexamination: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial

date is set". *Id*. at 7.  Based on all of the above, Plaintiff argues that Defendants have "not made any showing of hardship or inequity". *Id*.  Oppositely, Plaintiff contends that it has shown there is "a strong possibility that a stay will harm [its interests]" and that "the outcome...[of reexamination] is not binding upon the infringer, who may litigate the same issues in district court" such that the Court should discount "the relevance of the second and third factors". *Id*. at 7-8.

### 1. The factors cited above weigh in favor of denying a stay.

#### (a) A stay will unduly prejudice and tactically disadvantage Plaintiff.

Citing *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009), *eCOMSYSTEMS*, Case No. 10-1531, slip op. at 8, and *Heraeus Electro-Nite Co. v. Vesuvius USA Corp.*, 2010 U.S. Dist. LEXIS 1887, at *3 (E.D. Pa. 2010), Plaintiff maintains that "[w]here the parties are direct competitors, a stay would likely prejudice the non-movant" and "[s]tays should be denied where there is a concern that the patent owner will be irreparably harmed by the competitor's gain of market share during the pendency of the stay". *Id*. at 8.  A stay would prejudice Plaintiff by: "(1) allowing Defendants to continue knocking off Plaintiff's patented solar-powered fence post lights, gaining market share to the detriment of Plaintiff and its licensees; (2) delaying discovery and final resolution of Plaintiff's claims for more than two years; (3) giving Defendants a second bite at asserting the same prior art against the '637 patent; and (4) interfering with Plaintiff's ongoing licensing program". *Id*.  Plaintiff notes that, on average, it takes "25.6 months to complete the reexamination process from the filing date to the certificate issue date" and, if these results are appealed to the Board of Patent Appeals ("BPAI"),

"it will be nearly an additional three years until a decision is rendered". *Id*. at 9.  Thereafter either party may appeal to the Court of Appeals for the Federal Circuit. *Id*.  Thus, Plaintiff argues Defendants' attempt "to downplay the length of the delay caused by a stay...is misleading". *Id*.

Noting that Defendants "compete directly" with Plaintiff, Plaintiff maintains that granting a stay will allow Defendants to "continue to sell infringing goods" and thereby erode Plaintiff's market share and goodwill throughout the pendency of the entire reexamination process and any subsequent appeals. *Id*.  Citing *Heraeus*, 2010 WL 181375, at *1, *Nidec Corp. v. LG Innotek Co., Ltd.*, 2009 WL 3673433, at *4 (E.D. Tex. 2009), *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 2011 WL 487574, at *2 (D.N.J. 2011), and *Tesco*, 599 F. Supp. 2d at 851, Plaintiff argues that "compensation for these harms likely cannot be remedied by money damages" when the "parties are direct competitors" due to the loss of "substantial profits...[and] goodwill in the market" caused by any delay. *Id*. at 9-10.  Plaintiff contends that "the prejudice to [it] from delayed discovery would outweigh any mitigating effect of...money damages". *Id*. at 10.

Finally, citing *BarTex*, 611 F. Supp. 2d at 651-52, *Gladish v. Tyco Toys, Inc.*, 1993 WL 625509, at *2 (E.D. Cal. 1993), and *Bel Fuse*, Case No. 07-2168, slip op. at 37-38, Plaintiff contends that any delay may create "a tactical disadvantage at trial" due to the "expected loss of critical evidence as witnesses could become unavailable, their memories may fade, and evidence may be lost". *Id*.  Further, Plaintiff argues that Defendants' strategy "would derail the litigation and interfere with Plaintiff's licensing of the '637 patent so that Defendants can continue to manufacture and sell infringing products and take market share away from Plaintiff and its licensees". *Id*.  Plaintiff maintains that "this is demonstrated by Defendants repeated requests for

8

extension to answer and their reliance on the Maine Action Defendants' application for *ex parte* reexamination". *Id*.

### (b) A stay will not simplify issues at trial and is unlikely to conserve judicial resources.

Citing *Bel Fuse*, Case No. 07-2168, slip op. at 36-38, Plaintiff maintains "it is entirely speculative at this time whether the reexamination will have any impact on this litigation" but "what is certain is that Defendants intend to re-litigate the same issues raised in the reexamination before this Court", thereby "using the reexamination process as both a sword and a shield to get two attempts at invalidating the '637 patent and prevent Plaintiff from pursuing any remedies in defense of its business activities, market share, and goodwill in the interim". *Id*. at 10-11.  Plaintiff contends that Defendants have "raised defenses and counterclaims beyond the prior art cited in the Maine Action Defendants' request for reexamination, thus raising issues that the USPTO cannot and will not decide" and making it "virtually inevitable that discovery and this litigation will move forward after the reexamination". *Id*. at 11.  Citing the MANUAL OF PATENT EXAMINING PROCEDURE § 2217 (2008) and *BarTex*, 611 F. Supp. 2d at 653, Plaintiff notes that the USPTO "will only consider patents or printed publications" during reexamination and that "those references must be applied directly to claims under reexamination under 35 U.S.C. 103 and/or an appropriate portion of 35 U.S.C. 102" such that Defendants "may also raise invalidity arguments at trial other than those currently before the USPTO". *Id*.

Citing *Bel Fuse*, Case No. 07-2168, slip op. at 36-37 and *Hoescht Selanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996), Plaintiff argues that "[d]espite the fact that reexamination has been granted – as it is...over 90 percent of the time – whether or not the Patent

Office will declare the patent invalid is entirely speculative and the grant of reexamination is not probative of unpatentability and is unlikely to be entirely dispositive of the case since the overwhelming majority of patents survive reexamination". *Id*. at 11-12. Citing *Hoechst*, 78 F.3d at 1584 and *Nidec Corp.*, 2009 WL 3673433, at *6, Plaintiff maintains that "the USPTO's decision to reexamine the claims of the '637 patent cannot be perceived as a determination of invalidity" and the Court "should not put too much weight on the USPTO's actions because the showing required to obtain an order granting *ex parte* reexamination is easily reached". *Id*. at 12. In the first quarter of the 2011 fiscal year, "98%" of the requests for *ex parte* reexamination were granted by the USPTO. *Id*. Plaintiff notes that it now has the "opportunity to respond to the USPTO's initial determination" and that same "may result in the USPTO terminating the reexamination proceeding without issuing a single substantive rejection of any claim". *Id*. Assuming the USPTO decides to move forward, Plaintiff contends that "it is very unlikely that the USPTO will determine that all of the claims of the '637 patent are invalid" as "87% of patents will survive with confirmation of at least some of the claims". *Id*. at 12-13. Citing *Whatley v. Nike Inc.*, 54 U.S.P.Q. 2d 1124, 1126 (D. Or. 2000), Plaintiff argues that "the invalidity issues raised by Defendants and the '637 patent itself are not so overly complex as to require the USPTO's guidance". *Id*. at 13.

      Finally, Plaintiff contends that "the prior art cited in the request for reexamination is cumulative of prior art examined during the prosecution of the application for the '637 patent" – specifically, in its request for reexamination, the Maine Action Defendants cited U.S. Patent No. 5,367,422 to Frost et al. ("Frost") and U.S. Patent No. 5,453,729 to Chu ("Chu") as the basis for its contention that the '637 patent was anticipated by or obvious over the prior art. *Id*. Plaintiff

argues that "these references disclose nothing more than the prior art that the USPTO examiner considered during prosecution of the application for the '637 patent" and that "it is very likely that the '637 patent will emerge from reexamination with claims still covering Defendants' solar-powered fence post lights". *Id*.

### (c) Defendants' motivation is purely dilatory.

Plaintiff notes that Defendants "obtained two extensions of time to answer and had requested yet another extension...which Plaintiff opposed". *Id*. at 14. Further, because "the Court took no action on Defendants' informal request, Defendants filed [their] Answer...[on] May 2". *Id*. Plaintiff maintains that "Defendants' strategy is now clear: delay and avoid asserting a substantive position in this case and put a cloud over Plaintiff's patent". *Id*. Citing *Cheung v. Dulles*, 16 F.R.D. 550, 552 (D. Mass. 1954) and *Remington Arms Co. v. Modern Mouzzleloading, Inc.*, 1998 WL 1037920, at *3 (M.D.N.C. 1998), Plaintiff argues that "[c]ourts have held that requests for extension to answer should include requester's intent to serve motions or take other action". *Id*. Here, Plaintiff contends that Defendants "never indicated their intent to file a motion to stay when requesting their first two extensions to answer" and that "courts are reluctant to stay proceedings where a party is using the reexamination process merely as a dilatory tactic". *Id*. As such, Plaintiff requests "that the Court deny the Motion". *Id*.

### (d) A stay should not be granted at this stage in the litigation.

Citing *Wyeth*, 2011 WL 380902, at *3-4 and *Sunbeam Prods. Inc. v. Hamilton Beach Brands, Inc.*, 2010 WL 1946262, at *3 (E.D. Va. 2010), Plaintiff maintains that although Defendants believe "it is too early in the proceedings to deny the issue of stay, this District has recognized that although the advanced nature of a case approaching trial may weigh heavily

11

against granting a stay, the opposite inference – that a suit in the early stages should weigh heavily in favor of a stay – is not true". *Id*. at 14-15. In support of the proposition that "courts have denied a stay at a similar, or earlier, stage of litigation", Plaintiff cites *Ariba Inc. v. Emptoris, Inc.*, 2007 WL 3132606, at *1-2 (E.D. Tex. 2007), *Biax Corp. v. Fujitsu Computer Sys. Corp.*, 2007 WL 614187, at *2 (E.D. Tex. 2007), *Sighting Sys. Instruments, LLC v. Prestige Law Enforcement, Inc.*, 2006 WL 2642184, at *4 (N.D. Tex. 2006), and *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005). *Id*. at 15.

Separately, Plaintiff argues that the "cases cited by Defendants supporting a grant of a stay at later stages of litigation than the present case are distinguishable". *Id*. In *GPAC*, 144 F.R.D. at 61, "claims in the patent in suit were rejected by the USPTO during an initial reexamination after which the USPTO BPAI reversed the examiner and affirmed the validity of all of the patent claims including several new claims that were added". *Id*. In that case, "the motion to stay was filed after a second reexamination with the same result, and the second appeal process was underway". *Id*. Plaintiff notes that such is not the case here, as "the reexamination request was only recently approved...and no modifications to the claims [have] occurred". *Id*. In *Sabert*, 2007 WL 2705157, at *2, "the court granted a stay where defendant patent holder moved for a stay after requesting reexamination with both amended and new claims following plaintiff's Complaint, which requested declaratory judgment of patent non-infringement, declaratory judgment of patent invalidity as well as damages". *Id*. at 15-16. Here, "the accused infringer...is the party moving for a stay" and Plaintiff "has neither requested the reexamination nor submitted amended or new claims". *Id*. at 16. Plaintiff argues that "neither of the cases cited by Defendants [is] on point with the facts of this case" and, as such, the Motion should be denied.

*Id*.

        **2.    Although Plaintiff denies that a stay is warranted, if the Court is inclined to grant Defendants' Motion, any stay should be conditioned to conserve judicial resources and minimize prejudice to Plaintiff.**

Should the Court be inclined to stay this matter, Plaintiff argues that "such a stay should have certain conditions to minimize the prejudice to Plaintiff and...[to conserve] judicial resources". *Id*. at 16. Citing *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, 1987 WL 6314, at *4 (N.D. Ill. 1987) and *Heraeus*, 2010 WL 181375, at *1, Plaintiff maintains that many courts have granted stays only upon certain stipulations or conditions such as where "the moving party agrees not to assert at trial any prior art cited during reexamination" or where "the moving party withdraws the infringing products from the marketplace during the stay". *Id*. If a stay is entered in this matter, Plaintiff requests the following conditions be imposed: "(1) Defendants shall not be permitted to challenge the validity of the '637 patent at trial based on any prior art cited by or provided to the USPTO during reexamination; and (2) Defendants shall not expand [their] market for solar-powered fence post lights for the duration of the stay". *Id*.

### III.   DISCUSSION

    **A.   Legal Standards**

        **1.   Stay Proceedings**

It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)(*citing Kansas City Southern Ry. Co. v. U.S.*,

282 U.S. 760, 763 (1931); *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935)). "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id*. at 256. Specifically, "a United States district court has broad power to stay proceedings." *Bechtel Corp. v. Laborers' International Union*, 544 F.2d 1207, 1215 (3d. Cir. 1976). "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Id*.; *see also American Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937). However, "it is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity', if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Mansville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983)(*citing Landis v. North American Co.*, 299 U.S. 248, 255 (1936)).

With respect to patent cases, courts have "consistently recognized the inherent power of the district courts to grant a stay pending reexamination of a patent". *P&G v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008); *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir.), *cert. denied*, 464 U.S. 935 (1983); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988). However, "a stay should ordinarily not be granted unless there is a substantial patentability issue raised" and "both a preliminary injunction and a stay ordinarily should not be granted at the same time" because this "could subject an accused infringer to unfair and undesirable delay in reaching a final resolution". *Id*.; *see also Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001).

"A district court is not required to stay a proceeding pending reexamination", although

"one purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives reexamination proceedings)". *Cross Atl. Capital Partners., Inc. v. Facebook, Inc.*, 2008 U.S. Dist. LEXIS 62869, at *2 (E.D. Pa. 2008); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).  "[G]ranting a stay is favored" and is "particularly appropriate when the reexamination result might assist the court in making a validity determination or would eliminate the need to make an infringement determination". *Id*. at *2-3; *see also Alltech, Inc. v. Cenzone Tech, Inc.*, 2007 U.S. Dist. LEXIS 19989 (S.D. Cal. 2007); *ASCII Corp v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); *In re Cygnus Telecomm. Tech., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005).  In fact, "[a]lthough every case is fact specific, almost every reported New Jersey District Court opinion that has considered the issue has granted a stay where a reexamination request was pending". *Brass Smith, LLC v. RPI Indus.*, 2010 U.S. Dist. LEXIS 116063, at *19-20 (D.N.J. 2010).  However, "litigation and reexamination are not mutually exclusive alternatives for the parties to test the validity of a patent–they may be concurrent proceedings". *BarTex Research v. FedEx Corp.*, 611 F. Supp. 2d 647, 650 (E.D. Tex. 2009); *see also Ethicon*, 849 F.2d 1422, 1427-28.  District courts are "under no obligation to delay [their] own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze". *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 563 (E.D. Va. 2007).  Adoption of a "per se rule that patent cases should be stayed during reexamination...would not promote the efficient and timely resolution of patent cases, but would invite parties to unilaterally derail timely patent case resolution by seeking reexamination".

*Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 663 (E.D. Tex. 2005).

"Courts have enumerated many advantages with respect to staying a civil action pending PTO reexamination of a patent, which include: (1) a review of all prior art presented to a court by the PTO, with its particular expertise; (2) the potential alleviation of numerous discovery problems relating to prior art by PTO examination; (3) the potential dismissal of a civil action should invalidity of a patent be found by the PTO; (4) encouragement to settle based upon the outcome of the PTO reexamination; (5) an admissible record at trial from the PTO proceedings which would reduce the complexity of the litigation; (6) a reduction of issues, defenses and evidence during pre-trial conferences; and (7) a reduction of costs for the parties and a court". *ICI Uniqema, Inc. v. Kobo Prods., Inc.*, 2009 U.S. Dist. LEXIS 108421, at *3 (D.N.J. 2009); *see also Eberle v. Harris*, 2005 U.S. Dist. LEXIS 31885 (D.N.J. 2005); *GPAC, Inc. v. D.W.W. Enterprises, Inc.*, 144 F.R.D. 60, 63 (D.N.J. 1992). "District courts have listed the following factors to determine whether a stay is appropriate: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set". *Cross Atl.*, 2008 U.S. Dist. LEXIS 62869, at *3-4; *see also In re Laughlin Prods. Inc.*, 265 F. Supp. 2d 525, 530-31 (E.D. Pa. 2003); *Sabert Corp. v. Waddington North Am., Inc.*, 2007 U.S. Dist. LEXIS 68092 (D.N.J. 2007); *Alltech*, 2007 U.S. Dist. LEXIS 19989; *Cygnus*, 385 F. Supp. 2d at 1023; *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); *ASCII*, 844 F. Supp. at 1380; *GPAC*, 144 F.R.D. at 66; *ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421, at *4.

  B.  **Defendants' Motion**

Here, the Court finds that advancing this litigation while *ex parte* reexamination is pending before the USPTO may be an exercise in futility. If claims 1-23 of the '637 patent are invalidated, the basis for this lawsuit may be moot and the case dismissed.

Further, with respect to the factors used to determine the appropriateness of a stay, the Court finds that they also weigh in Defendants' favor. While the Court appreciates that a stay would delay these proceedings, delay alone is not a sufficient reason to deny a stay. *See Stryker Trauma S.A. v. Synthes*, 2008 U.S. Dist. LEXIS 23955 (D.N.J. 2008); *see also Sorensen v. Black and Decker Corp.*, 2007 U.S. Dist. LEXIS 66712 (S.D. Cal. 2007). Similarly, while the Court appreciates Plaintiff's concern that Defendants are competitors which may continue selling infringing goods and eroding market share and goodwill during a stay, Plaintiff did not seek a preliminary injunction in this matter and the Court denies Plaintiff's request to impose any restraints with respect to Defendants' business activities at this time. *See WABCO Holdings, Inc. v. Bendix Commer. Vehicle Sys.*, 2010 U.S. Dist. LEXIS 64036, at *8-9 (D.N.J. 2010). Importantly, the Court notes that all of Plaintiff's legal and equitable remedies will be available when the stay is lifted; a stay does not foreclose Plaintiff from any remedy. Given that discovery in this matter has not yet begun and the fact that no trial date has been set, and based upon the factors cited with respect to the advantages of granting a stay while the USPTO conducts a reexamination (*see ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421, at *3), the Court also finds that a stay may ultimately simplify the issues in question and the trial of this case.

As set forth in *Sorensen*, 2007 U.S. Dist. LEXIS 66712, at *18-19,

> If the PTO does not invalidate or otherwise alter the claims of the patent, the plaintiffs' legal remedy remains unaffected. Moreover, if the claims are narrowed, both sets of parties will have benefitted

> by avoiding the needless waste of resources before this Court, and again, the plaintiffs will be able to pursue their claim for money damages at trial. Finally, if the claims are strengthened, the plaintiffs' position will be as well, and their likelihood of monetary damages will increase.

At the same time, based upon the fact that "the Federal Circuit has recently confirmed that the PTO would not be bound in its reexamination by the determinations of [a district court]",

> not only is plaintiff unlikely to be prejudiced in these proceedings by a stay pending the PTO reexamination, but defendants would potentially be prejudiced by failing to enter a stay. ...Not only could the court and the PTO reach conflicting determinations, but one possible scenario could result in irreparable harm to defendant: if this court finds that the patent is not invalid and the defendant has infringed it, and orders defendant to pay damages to plaintiff for such infringement, then defendant would have no ability to recover those damages if at a later date the PTO determined that the patent is invalid.

*Sorensen*, 2007 U.S. Dist. LEXIS 66712, at *15; *see also Bausch & Lomb, Inc. v. Alcon Lab.*, Inc., 914 F. Supp. 951, 952 (W.D.N.Y. 1996). Contrary to the argument proffered by Plaintiff, the Court finds that "Congress...does not estop a third-party requester in an *ex parte* reexamination from challenging validity in a future civil action...in the same way that it does in *inter partes* reexaminations" although it could have included a similar legislative provision to that effect. *WABCO*, 2010 U.S. Dist. LEXIS 64036, at *6-8; 35 U.S.C. §§ 305, 306, 314, 315. As a result, and based on the fact that a USPTO decision will be beneficial to the Court by either declaring the patent "unpatentable...[and] eliminating the need for the trial" or by finding the "claims to be valid...[and thereby] aid[ing] the Court when considering the claims during litigation", the Court denies Plaintiff's request to limit Defendants' ability to challenge the validity of the '637 patent in this matter based upon prior art cited in the *ex parte* reexamination.

*Id.*; *see also GPAC*, 144 F.R.D. at 65-66; *Gould*, 705 F.2d at 1342.

While the Court recognizes that the Complaint in this case was filed in January 2011 and discovery would otherwise commence in the near future, failing to grant a stay at this time may in fact prolong, rather than expedite, this litigation.

### IV. CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 24th day of May, 2011,

**ORDERED** that Defendants' Motion to stay this matter pending completion of the U.S. Patent and Trademark Office's *ex parte* reexamination of the '637 patent [dkt. entry. no. 10] is **GRANTED**; and it is further

**ORDERED** that counsel for Defendants shall notify the Court within ten (10) days of any disposition of the USPTO's *ex parte* reexamination of the '637 patent.

                         s/ *Douglas E. Arpert*
                         **DOUGLAS E. ARPERT**
                         **UNITED STATES MAGISTRATE JUDGE**